U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JAN -8 2016

**FILED**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:15-cr-188-01-JD |
| ) | |
| PEDRO PENA ) | |
| ) | |

<u>PLEA AGREEMENT</u>

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United

States of America, by its attorney, Donald Feith, Acting United States Attorney for the District of

New Hampshire, and the defendant, Pedro Pena, and his attorney, Eduardo Masferrer, Esquire,

enter into the following Plea Agreement.

1.   <u>The Plea and Offense</u>.

The defendant, Pedro Pena, agrees to plead guilty to Count One of an indictment which

charges him with the unlawful distribution of 100 grams or more of a mixture or substance

containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21

U.S.C. §841(b)(1)(B)(i).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in section 6 of this agreement.

2.   <u>The Statute and Elements of the Offense</u>.

A.      <u>The Statutes</u>

21 U.S.C. § 841(a)(1) provides, in pertinent part:

**(a)** Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or
intentionally–

**(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture,
distribute, or dispense, a controlled substance.

21 U.S.C. § 841(a)(1)(West 2015).

2

B.    Elements of the Offenses.

Counts One – Unlawful Distribution of Heroin

The defendant understands that the offense contained in Counts One of the Indictment

has the following three (3) elements, each of which the United States would be required to prove

beyond a reasonable doubt at trial: *indictment*



FIRST, that on the date charged in the information the defendant distributed 100 grams or

more of a mixture or substance containing a detectable amount of heroin, a Schedule I

controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(i).[1];

SECOND, that the defendant knew that the substance was heroin; and

THIRD, that the defendant knowingly and intentionally distributed such controlled

substance.

3.    Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the United States

would prove the following facts beyond a reasonable doubt:

Beginning in and around 2011 and continuing through on or about mid-March, 2015,

Ross Gould led the Gould drug trafficking organization (DTO), which distributed

multi-kilograms of heroin and quantities of cocaine throughout the Keene, New Hampshire area

and surrounding towns.

The Gould DTO routinely obtained large quantities of heroin from sources of supply

located in Lawrence, Massachusetts who they typically met in the parking lot of the Rockingham

Mall, Salem, New Hampshire to conduct drug transactions, after which the narcotics were

transported to Keene, New Hampshire for distribution.

---

1 The United States would also be required to prove that it was reasonably foreseeable to the defendant
that the conspiracy involved at least 100 grams or more of heroin. United States v. Pizarro, 772 F.3d 284
(1st Cir. 2014).

3

On March 10, 2015, Gould was arrested by law enforcement. In a post-arrest statement, Gould stated that prior to his arrest, he met a source of supply of heroin that Gould identified as "Pedro" at the Rockingham Park Mall in Salem, Massachusetts and purchased approximately 100 grams of heroin "Pedro", subsequently identified as the defendant.

Gould stated that from the summer of 2014 through and including March 10, 2015, the defendant was one of Gould's heroin sources from whom he purchased "fingers" of heroin (approximately ten grams of heroin) and that he paid between $180 and $400 per finger, depending on quality.

On March 11th and 12th, 2015, and while acting at the direction of law enforcement, Gould made several recorded telephone calls to the defendant and arranged to meet the defendant in the parking lot of the mall to purchase 20 fingers (approximately 200 grams) of heroin.

On March 13, 2015, ground surveillance units set up in the parking lot of the mall. Air surveillance was also present as Gould was directed by law enforcement to park his vehicle in the vicinity of the Macy's parking lot. The defendant was surveilled as he exited the vehicle and entered Gould's. The two met briefly during which Gould handed the defendant a "flash roll" of currency which law enforcement had previously provided to Gould. According to Gould, the defendant took the money, which he did not count, and placed the package of heroin in the center console.[2]

The defendant exited the Gould's vehicle and was surveilled as he walked from the parking lot into Macy's at a fast pace. The defendant was arrested just inside of the store. The "flash role" was recovered nearby on the floor.

The New Hampshire State Police Forensic Laboratory concluded that the total weigh of heroin sold by the defendant amounted to 200.9 grams.

---

2 Gould was equipped with a recording device which was operational during the meeting.

4

The defendant agrees and stipulates that the amount of heroin charged in Count One of the Indictment attributable to the defendant as a result of his own conduct, and the conduct of others reasonably foreseeable to him, is at least 100 grams of heroin, in violation of 21 U.S.C. § 841(b)(1)(B)(i).

4.  Penalties.

The defendant understands that the penalties for the offense include:

A.      With Respect to Count One:

        1.      A mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of forty years (21 U.S.C. § 841(b)(1)(B)(i));

        2.      A $5,000,000 fine; and

        3.      A term of supervised release of at least four years and as much as life.

B.      A mandatory special assessment of $100.00 for each count of conviction ($100.00) which the defendant agrees to pay at or before the time of sentencing; and

C.      The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

5.  Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that the defendant has no right to withdraw the defendant's guilty plea if the applicable advisory guideline range or the defendant's sentence is other than the defendant anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

5

A.    advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    respond to questions from the Court;

C.    correct any inaccuracies in the pre-sentence report;

D.    respond to any statements made by the defendant or the defendant's counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663.

6.    <u>Stipulations and Other Agreements</u>.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant have stipulated to the following:

The government agrees to recommend that the defendant be sentenced within the applicable advisory United States Sentencing Guideline range.

The defendant understands that the Court is not bound by the foregoing agreement and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

6

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.   The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.      fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

B.      challenges the United States' offer of proof at any time after the plea is entered;

C.      denies involvement in the offense;

D.      gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.      fails to give complete and accurate information about the defendant's financial status to the Probation Office;

F.      obstructs or attempts to obstruct justice, prior to sentencing;

7

G.      has engaged in conduct prior to signing this Plea Agreement which reasonably
could be viewed as obstruction or an attempt to obstruct justice, and has failed to
fully disclose such conduct to the United States prior to signing this Plea
Agreement;

H.      fails to appear in court as required;

I.      after signing this Plea Agreement, engages in additional criminal conduct; or

J.      attempts to withdraw the plea of guilty.

If the defendant's offense level is sixteen or greater, and the defendant has assisted the
United States in the investigation or prosecution of the defendant's own misconduct by timely
notifying the United States of the defendant's intention to enter a plea of guilty, thereby
permitting the United States to avoid preparing for trial and permitting the United States and the
Court to allocate their resources efficiently, the United States will move, at or before sentencing,
to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. §
3E1.1(b).

The defendant understands and agrees that the defendant may not withdraw the
defendant's guilty plea if, for any of the reasons listed above, the United States does not
recommend that the defendant receive a reduction in the defendant's sentence for acceptance of
responsibility.

The defendant also understands and agrees that the Court is under no obligation to reduce
the offense level if it finds that the defendant has not accepted responsibility.

8

8.   <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that the defendant has the right to be represented by an

attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the

defendant.   The defendant understands that the defendant has the right:

A.    to plead not guilty or to maintain that plea if it has already been made;

B.    to be tried by a jury and, at that trial, the right to the assistance of counsel;

C.    to confront and cross-examine witnesses against the defendant;

D.    not to be compelled to provide testimony that may incriminate the defendant; and

E.    to compulsory process for the attendance of witnesses to testify in the defendant's

defense.

The defendant understands that by pleading guilty the defendant waives and gives up

those rights and that if a plea of guilty is accepted by the Court, there will not be a trial of any

kind.

The defendant understands that if the defendant pleads guilty, the Court may ask the

defendant questions about the offense, and if the defendant answers those questions falsely under

oath, on the record, and in the presence of counsel, the defendant's answers may later be used

against the defendant in a prosecution for perjury or making false statements.

9.   <u>Acknowledgment of Guilt; Voluntariness of Plea</u>.

The defendant acknowledges that the defendant:

A.    is entering into this Plea Agreement and is pleading guilty freely and voluntarily
because the defendant is guilty;

B.    is entering into this Plea Agreement without reliance upon any discussions with the
United States and without promise of benefit of any kind except as described in this
Plea Agreement;

C.    is entering into this Plea Agreement without threats, force, intimidation, or
coercion of any kind;

D.     understands the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law; and

E.     is completely satisfied with the representation and advice received from the defendant's undersigned attorney.

10.    <u>Scope of Agreement</u>.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-federal, state or local authority.   The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from the defendant's plea of guilty.   The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.   The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.    <u>Collateral Consequences</u>.

The defendant understands that the defendant will be adjudicated guilty of the offense to which the defendant will plead guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12.    <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the defendant in the District of New Hampshire as a result of the defendant's participation in the conduct which forms the basis of the Information in this case. The defendant understands that if, before sentencing, the defendant violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw from it.

10

13.  <u>Waivers</u>.

A.      Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence

on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily

waives his right to challenge on direct appeal:

1.      His guilty plea and any other aspect of his conviction, including, but not
        limited to, adverse rulings on pretrial suppression motion(s) or any other
        adverse disposition of pretrial motions or issues; and

2.      All aspects of the sentence imposed by the Court if the period of
        incarceration is within, or lower than, the guideline range determined by the
        Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new

legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.      Collateral Review.

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering

into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally

challenge:

1.      His guilty plea, except as provided below, and any other aspect of his
        conviction, including, but not limited to, adverse rulings on pretrial
        suppression motion(s) or any other adverse disposition of pretrial motions
        or issues; and

2.      All aspects of the sentence imposed by the Court if the period of
        incarceration is within, or lower than, the guideline range determined by the
        Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the

ground of ineffective assistance of counsel.   The defendant's waiver of his right to collateral

11

review also does not operate to waive a collateral challenge based on new legal principles

enunciated in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

      C.      Freedom of Information and Privacy Acts.

      The defendant hereby waives all rights, whether asserted directly or by a representative,

to request or receive from any department or agency of the United States any records pertaining

to the investigation or prosecution of this case, including without limitation any records that may

be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5

U.S.C. §522a.

      D.      Appeal by the Government

      This Plea Agreement does not affect the rights or obligations of the United States as set

forth in 18 U.S.C. § 3742(b), and the United States therefore retains its appeal rights.

      14.    No Other Promises.

      The defendant acknowledges that no other promises, agreements, or conditions have been

entered into other than those set forth in this Plea Agreement or revealed to the Court, and none

will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

      15.    Final Binding Agreement.

      None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and his attorney and until signed by the United States

Attorney for the District of New Hampshire, or an Assistant United States Attorney.

12

16.   <u>Agreement Provisions Not Severable</u>.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Dated: 1/8/16

<div style="margin-left: 40%;">

EMILY GRAY RICE
United States Attorney

By:   Jul C. Davis

Jennifer Cole Davis
Assistant U.S. Attorney
NH Bar Association # 10222
53 Pleasant St., 4th Floor
Concord, NH 03301
jennifer.c.davis@usdoj.gov
(603) 225-1552

</div>

The defendant certifies that he has read and/or had translated to him this 12-page Plea Agreement and that he fully understands and accepts the terms thereof.

Pedro Pena, defendant                    Date: 1/8/16

I have read the above and explained it to my client, who advises me that he understands and accepts its terms.

Eduardo Masferrer, Esquire,             Date: 1/8/16
Counsel for Pedro Pena