```
                 UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *   15-CR-188-01-JD
            v.                   *   April 13, 2016
                                 *   11:00 a.m.
        PEDRO PENA               *
                                 *
* * * * * * * * * * * * * * * * *


              TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE JOSEPH A. DICLERICO
```

APPEARANCES:

For the Government:     Jennifer C. Davis, AUSA
                        U.S. Attorney's Office


For the Defendant:      Eduardo Masferrer, Esq.
                        Masferrer & Associates, PC


Probation:              Riaka McCormick


Court Reporter:         Susan M. Bateman, LCR, RPR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1453

```
 1                    P R O C E E D I N G S
 2             THE CLERK:  The Court has before it for
 3   consideration this morning a sentencing in criminal case
 4   15-188-01-JD, United States of America versus Pedro Pena.
 5             THE COURT:  All right.  Good morning.
 6             MS. DAVIS:  Good morning, your Honor.
 7             MR. MASFERRER:  Good morning.
 8             THE COURT:  The Court has a presentence
 9   investigation report before it.  Have you had a chance to
10   review that with your client?
11             MR. MASFERRER:  I have, your Honor.  Thank you.
12             THE COURT:  Are there any exceptions or objections
13   that you would like to take up?
14             MR. MASFERRER:  There are none, your Honor.
15             THE COURT:  All right.  That being the case, the
16   Court accepts the factual findings and the guideline
17   applications contained in the presentence investigation
18   report.  That results in a total offense level of 19, a
19   Criminal History Category of I, yielding a guideline range of
20   30 to 37 months.
21             Does the government have a recommendation?
22             MS. DAVIS:  We do, your Honor.  The government
23   recommends a low-end term of imprisonment of 30 months.
24             THE COURT:  And what's the basis for the
25   government's recommendation?
```

1           MS. DAVIS:  Your Honor, the basis for the
2   government's recommendation is that a term of imprisonment of
3   30 months satisfies the sentencing goals enumerated in 18
4   U.S.C. 3553(a).  Particularly, it will provide just
5   punishment for the offense, promote respect for the law, and
6   will also provide general and specific deterrence.
7           I think in the context of what this district is
8   facing today in terms of the opiate and heroin epidemic
9   general deterrence takes on greater importance than perhaps
10  it had in the past in the context of heroin cases, because to
11  impose lenient sentences now would send such a message to
12  those trafficking in those substances that the risk of
13  committing the crime is worth it because the reward would be
14  a less than severe sentence.
15          And given what is happening in this district with
16  the importation of heroin from sources of supply from
17  Lawrence, Massachusetts, such as in this case, the Court
18  needs to send a stern message that it will not tolerate such
19  drug trafficking.
20          A 30-month sentence will also be in accord with the
21  length of sentences that the Court hands down for similarly
22  situated defendants and will not result in a sentencing
23  disparity.  And it also is not so severe as to fail to
24  recognize that upon completion of his term of imprisonment
25  the defendant is likely under any circumstances to be

1  deported back to the Dominican Republic given that the
2  instant offense is an aggravated felony.
3           Thank you, your Honor.
4           THE COURT:  All right.  Thank you.
5           MR. MASFERRER:  Thank you, your Honor.
6           Judge, we've submitted a sentencing memorandum with
7  some letters and photographs from the family.
8           We are asking the Court to consider imposing a
9  sentence a little below the recommended sentence.  We're
10 asking for a sentence not to exceed 24 months.
11          As I'm sure the Court has read in the sentencing
12 memorandum, and as the Court can see here today, Mr. Pena has
13 a wide variety of support.
14          He has for all intents and purposes grown up in the
15 United States.  He came here at the age of 14.  He went to
16 high school in Massachusetts, graduated, and was gainfully
17 employed in asbestos removal for over a decade.  And it
18 wasn't until the last two or three years that he made some
19 poor choices in his life, poor choices in Massachusetts and
20 poor choices here in New Hampshire, that resulted in his
21 commission of the offense.
22          I've spoken at length to Mr. Pena, and certainly to
23 his family who is here.  I know that if your Honor gives him
24 an opportunity you will hear from him.
25          He's very remorseful and regretful.  He has no one

1   to blame for his mistakes but himself.  He was raised right.
2   He grew up with a strong, positive family, realizes the shame
3   that he's brought upon himself and upon them, and has been
4   emotional this morning seeing the amount of support through
5   those letters and their appearing here.
6          The question for the Court is, is 30 months
7   necessary in order to achieve a punishment for Mr. Pena.  I
8   would submit to the Court it's not an unreasonable sentence,
9   but certainly a 24-month sentence I would submit to the Court
10  is more reasonable.
11         Number one, it incarcerates Mr. Pena.  He's been
12  incarcerated for about 13 months I think as of today.  A
13  24-month sentence still leaves him with an additional year or
14  so to do on his sentence.  That's going to be away from
15  family.  He won't be anywhere local where they can see him
16  with any regularity, and it imposes a loss of liberty.  For
17  someone who has been working, who has children, who has a
18  family, any loss of liberty is significant, and certainly
19  another year in incarceration is significant for Mr. Pena.
20         It brings along with it the consequence of
21  deportation.  Any sentence your Honor would impose would
22  create that consequence, but for Mr. Pena it presents some
23  unusual challenges.  He's not somebody who has only been here
24  two or three years and therefore has lots of job
25  opportunities and contacts and just got here and decided to

1   start committing crimes.  He's somebody who was raised here;
2   somebody who has lived here; somebody who has established
3   every familial route practically here.
4         And it will be difficult for him to go to the
5   Dominican Republic and start anew, start looking for jobs,
6   start trying to support his children and his family there.
7   It's going to be a challenge for him to do that.
8         He won't be able to ever reenter the United States,
9   not in a lawful sense of the word, because as an aggravated
10  felon convicted of a drug conviction he's not eligible for
11  any return.
12        If he were to reenter illegally, and Mr. Pena and I
13  have discussed this, he's very aware that he would be facing
14  reentry charges.  He would be looking at a five-year federal
15  prison sentence on top of the time he does here for
16  reentering.  That's not something he plans to do, and that's
17  not something his family certainly plans to accommodate.
18        So the consequences to him are not just
19  incarceration.  It's deportation.  It's loss of family.  A
20  more permanent loss in terms of being away from them on any
21  sort of a regular basis.
22        We asked for the reduction in sentence -- I think
23  primarily in my head 24 months is a sufficient sentence, but
24  additionally we would point out that as a non-U.S. citizen
25  his prison sentence -- his incarceration conditions tend to

1  work out in a much harsher way to him.  And so what we're
2  asking for is not for him to receive a benefit for being a
3  non-U.S. citizen but rather to balance out those facts.
4        The Court can see that during the time period that
5  Mr. Pena has been at the Strafford County jail he has been
6  very proactive, not just as a painter, to the point that the
7  deputy superintendent wrote a letter commenting on how
8  helpful and trustworthy he is, but also taking courses and
9  classes to improve himself, to find ways to better his mind,
10 to find ways to better his future.
11        None of that will be available to him in a federal
12 facility.  And it's not as a specific punishment.  It's that
13 the federal facility has limited means and limited programs
14 so their priority goes to people who are going be re-released
15 within the United States.  Those are the individuals who are
16 eligible for the halfway house program.  Those are the
17 individuals who become eligible for any sort of program, from
18 residential drug treatment, which is not Mr. Pena's goal, but
19 even mental health or counseling or classes.  All of that is
20 very limited under the Bureau of Prisons current financial
21 situation.
22        And so really Mr. Pena, a very intelligent man who
23 has been striving to better himself given his circumstances,
24 is about to enter into a prison condition where there will be
25 nothing offered to him.  No matter how much he wants to or

1    tries or how much good behavior he demonstrates, because of
2    those things he'll be limited to really not being able to do
3    anything to improve himself or rehabilitate in any way.
4             And so that does create more of a challenge for an
5    individual.  Sitting in a jail is hard enough as it is, but
6    sitting in a jail where you're not even able to be productive
7    in any significant way does weigh on individuals in a
8    different way than when you're in programs or participating.
9             And so we're asking the Court to consider again a
10   24-month sentence instead of a 30-month sentence as a way of
11   ameliorating that specific condition for Mr. Pena.
12            Of course he's going to be deported at the end of
13   it.  So at the end of his federal sentence he'll spend some
14   period of time in immigration custody as they work out that
15   process of finalizing his removal from the United States.
16   There's always going to be that sort of unknown amount of
17   time that he'll be spending in detention awaiting his
18   removal.
19            Beyond that, Judge, I think you can see from the
20   letters in terms of a very specific -- you know, the man you
21   have in front of you very specifically, they speak of him
22   very highly.  The family was very surprised.  Some -- a lot
23   of the family members were very surprised when they found out
24   that Mr. Pena engaged in this type of conduct.  That wasn't
25   the person they had seen or known.

1           I think it's a testament to the fact that they're
2  still willing to come up here.  Some of them came up from New
3  York City, some from Massachusetts.  All were here very early
4  this morning to show their support for him.
5           So on behalf of them, on behalf of Mr. Pena, I
6  would ask the Court to consider respectfully a 24-month
7  sentence.  We feel that sentence is sufficient to punish him,
8  sends a message to the community that you will be
9  incarcerated and will be deported if you engage in this type
10 of conduct, and yet allows Mr. Pena to find some hope to
11 renew his life again.
12          Thank you, your Honor.
13          THE COURT:  Well, while deportation is a factor
14 that is to be weighed and considered, the weight that is to
15 be given to that varies according to the circumstances.
16          MR. MASFERRER:  Yes, your Honor.
17          THE COURT:  The more serious the offense, the less
18 weight may be given to deportation.  It's sort of a sliding
19 scale.
20          MR. MASFERRER:  It is, Judge.  I think that -- I
21 understand that.  I think -- when you look at that sort of
22 sliding scale, I think it's more than just the weight of the
23 seriousness.
24          Certainly I'm sure the Court sees individuals who
25 have not been present in the United States very long, and so

1  deportation isn't the same consequence as somebody who came
2  here as a child.  Certainly where you have one or two family
3  members here, but the bulk of your family is in the Dominican
4  Republic.  But you came here as an adult so you have
5  contacts.
6         Deportation, while not a criminal punishment, the
7  consequence weighs more heavily on the defendant in a
8  circumstance like this where he has long-standing ties in the
9  United States, the bulk of his family is in the United
10 States, all his job and future employment possibilities are
11 in the United States, and all of that will be permanently
12 taken away from him.
13        And then how the Court weighs that given everything
14 else obviously is on your Honor, and that's why we suggested
15 that six-month departure, or variance as the Court would like
16 to see it, because it still imposes a significant punishment
17 on Mr. Pena.  It doesn't reward him in any way, but it takes
18 into account that his time spent in jail from this point
19 forward soon won't be as productive and will feel harsher on
20 him psychologically than the conditions that he's been in up
21 to this point.
22        Thank you, your Honor.
23        THE COURT:  All right.  Thank you.
24        Mr. Pena, is there anything that you would like to
25 say to the Court before the Court acts on this matter?

1    THE DEFENDANT:  There's not much I really want to
2 say.  I was just going to tell you that I came to the United
3 States when I was 14 years old.  I had that opportunity.  I
4 just took the wrong choice in the last two years.
5    I have a beautiful family.  They're the best family
6 in the world.  As you can see, I have a lot of friends.  I
7 think I'm a changed man, but I just want to say sorry to my
8 family.  Thank you.
9    MR. MASFERRER:  Thank you, your Honor.
10   THE COURT:  Thank you.
11   (Pause.)
12   Please stand, Mr. Pena.
13   The Court will read the sentence, and if either
14 counsel has a legal objection you can tell me what this is
15 when I finish.
16   Pursuant to the Sentencing Reform Act of 1984, it
17 is the judgment of the Court that the defendant, Pedro Pena,
18 is hereby committed to the custody of the Bureau of Prisons
19 to be imprisoned for a term of 30 months.
20   Upon release from imprisonment the defendant shall
21 be placed on supervised release for a term of three years.
22   Within 72 hours of release from the custody of the
23 Bureau of Prisons the defendant shall report in person to the
24 probation office in the district to which the defendant is
25 released.

1            While on supervised release the defendant shall not
2    commit another federal, state, or local crime, shall comply
3    with the standard conditions that have been adopted by this
4    Court, and shall comply with the mandatory and proposed
5    special conditions attached to the presentence report.
6            It is ordered that the defendant shall pay to the
7    United States a special assessment of $100, which shall be
8    due in full immediately.
9            The Court finds that the defendant does not have
10   the ability to pay a fine and waives the fine in this case.
11           The defendant is remanded to the custody of the
12   United States Marshal.
13           Does the government have any legal objection to
14   this sentence?
15           MS. DAVIS:  We do not, your Honor.
16           THE COURT:  Any legal objection?
17           MR. MASFERRER:  No, your Honor.  Thank you.
18           THE COURT:  Mr. Pena, it's my obligation to inform
19   you that to the extent that there are any issues that can be
20   appealed you do have a right to appeal this sentence to the
21   United States Court of Appeals in Boston.  That appeal must
22   be taken within 14 days of when judgment is entered.  And if
23   you cannot afford the costs of an appeal or an attorney on
24   appeal, then those will be provided for you.
25           The Court has considered the applicable guidelines

1    and the sentencing factors in imposing this sentence.  The
2    Court has taken into account the government's recommendation
3    and your counsel's recommendation of 24 months.
4         The unlawful distribution of heroin is a very
5    serious offense which is aggravated in this case by the
6    amount involved.  We're talking about 300 grams.  Heroin has
7    become an insidious epidemic which is affecting the lives of
8    many people in disastrous ways, including death.
9         Therefore, a sentence of incarceration of
10   appropriate length is necessary in order to punish you for
11   this offense, in order to deter you and others from
12   committing similar offenses, in order to promote respect for
13   the law, and to protect society.
14        The Court has also considered your lack of any
15   prior criminal record.  The Court has considered the fact
16   that you will in all likelihood be deported, and that in all
17   probability you will not be allowed to return to the United
18   States.  These are obviously very serious consequences.
19        The Court has also considered the fact that during
20   your pretrial detention that you have participated in a
21   variety of programs very constructively, and for that you are
22   to be commended, and you have held a position as a trustee
23   doing painting work, and the Court has also considered your
24   other personal characteristics.
25        The fact that you are going to be deported under

1  your circumstances where you've been in this country for a
2  number of years was considered by the Court, as I said a
3  minute ago, because quite frankly the Court was considering a
4  sentence of 36 months in this case. So I have weighed that
5  in this sentencing process.
6  　　　　　The Court will be in recess.
7  　　　　　(Conclusion of hearing at 11:20 a.m.)

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 7-20-16

*Susan M. Bateman*

**SUSAN M. BATEMAN, LCR, RPR, CRR**
LICENSED COURT REPORTER, NO. 34
STATE OF NEW HAMPSHIRE